```
UNITED STATES DISTRICT COURT                 FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CARLO BUONVIAGGIO,

                Plaintiff,                          MEMORANDUM
                                                       AND
        -against-                                     ORDER
                                                   04 CV 357 (JG)
JO ANNE B. BARNHART, Commissioner
        of Social Security,

                Defendant.
-------------------------------------------------------------x
```

APPEARANCES:

    WENDY BRILL
        9 Murray Street, Suite 4 West
        New York, New York 10007
        Attorney for Plaintiff

    ROSYLNN A. MAUSKOPF
        United States Attorney
        Eastern District of New York
        One Pierrepont Plaza
        Brooklyn, NY 11201
    By:   Som Ramrup
        Special Assistant United States Attorney
        Attorney for Defendant

JOHN GLEESON, United States District Judge:

Carlo Buonviaggio seeks review of the Commissioner of Social Security's denial of his claim for disability benefits. Buonviaggio's claim was heard by an Administrative Law Judge ("ALJ"), who concluded Buonviaggio was not disabled within the meaning of 42 U.S.C. § 423(d) prior to September 30, 1998, the date Buonviaggio was last insured. Specifically, the ALJ found that although Buonviaggio's several back injuries constituted a severe impairment under 20 C.F.R. § 404.1521, Buonviaggio retained the "residual functional capacity to perform the requirements of his past relevant work" as a firefighter and construction worker up through

September 1998.  A.R. 21.[1]  The ALJ's decision became the final decision of the Commissioner on December 4, 2003, when the Appeals Council denied review.  A.R. 5-7.  Buonviaggio then brought this action, and, based upon the record before the Commissioner, the parties cross-moved for judgment on the pleadings.

Because the ALJ failed to consider the "Residual Function Capacity Evaluation" of Buonviaggio's only treating physician, which retrospectively describes Buonviaggio's condition as of September 26, 1992 as unfit for construction work or fighting fires, I will remand the case to the Commissioner for further consideration.

BACKGROUND

Buonviaggio, a 23-year veteran of the New York City Fire Department (the "FDNY"), claims he has been disabled since September 1992, when he retired from the FDNY.  Buonviaggio testified he injured his back on the job in July of that year, aggravating an injury he sustained while fighting a fire in 1978, but that he was denied disability benefits from the FDNY for "a technical reason" that "had nothing to do with [his] medical condition."  A.R. 36-37.  Buonviaggio apparently again re-injured his back later in September while working on a construction project, A.R. 141, causing him severe pain in his back, buttocks, and right leg.  His orthopedist, Dr. Patrick Collalto, concluded Buonviaggio needed surgery.  Dr. Collalto performed a microdiscectomy on October 16, 1992, and Buonviaggio claims he has never been able to work since.

Ten days after the surgery, Dr. Collalto recorded Buonviaggio's wound was "well-healed" and that the pain in Buonviaggio's leg was "essentially ... gone."  A.R. 139.  By

---

[1] "A.R." refers to the pagination in the administrative record.

November 1992, Buonviaggio was "doing very well" with "good strength in his legs." A.R. 139. On January 14, 1993, Dr. Collalto again gave a positive report: "In regards to his lumbar disk, he is doing very well. He has good mobility of his back, strength to his leg and the straight leg raise is negative." A.R. 136.

Dr. Collalto referred Buonviaggio for a course of physical therapy in July 1993 after Buonviaggio reported "some recurrent back pain," A.R. 135, and the treatment apparently worked: in a letter of January 10, 1994, the physical therapist informed Dr. Collalto that Buonviaggio, "[w]hen last seen for his program on December 2, 1993 ... stated that he was basically not experiencing any more pain ... [and was] feeling stronger and considerably more flexible." A.R. 131. According to the therapist, Buonviaggio reported he was "a construction worker and therefore performs heavy physical activities" and "wears a lumbar wrap while working." A.R. 131. Buonviaggio also "stated that at the end of a working day he would feel numb behind the posterior aspect of his hamstring muscles, especially on the right," but that "he felt he had attained at least an 80% improvement in his overall condition." A.R. 131-32.

After Dr. Collalto received that letter, he saw Buonviaggio only three more times before September 30, 1998, the date Buonviaggio was last insured for disability. Dr. Collalto's notes from Buonviaggio's visit of May 12, 1994 do not mention his back at all; Buonviaggio complained only of tennis elbow and "pain with range of motion" in his neck. A.R. 130. On December 12, 1994, Dr. Collalto recorded that Buonviaggio "had a re-exacerbation of his back pain .... related to his injury that occurred in ... September of 1992. His pain is in the left side of his lower back .... but no neurologic signs in his lower extremities." A.R. 129. Dr. Collalto "advised physical therapy." *Id*. Buonviaggio returned to Dr. Collalto on January 19, 1995 with

similar complaints of back pain, but he "could not go to physical therapy as of yet because of some changes in his insurance company." A.R. 128. Buonviaggio showed "stiffness on forward bending, but his leg symptoms seem[ed] to be somewhat under control." *Id*. Dr. Collalto again referred Buonviaggio to physical therapy.

In January 1996, Buonviaggio sought treatment from Dr. Mark Schneiderman, a chiropractic physician. Buonviaggio complained of severe back pain after having "fall[en] down some stairs while attempting to carry debris to the cellar"; he was "barely able to walk." A.R. 111. As a result of this visit, Dr. Schneiderman wrote to Herder-Tarricone Associates, a New Jersey health insurance company: "we took him out of work for 2 1/2 weeks starting 1/16/96." A.R. 111.

Buonviaggio testified that "his negligence" was to blame for him not having gone to Dr. Collalto more, A.R. 35, but that he was "allergic to medication, anti-inflammatories and everything." A.R. 34. As Buonviaggio explained, "the only thing that they would do for me, he would put me on pain killers, and say, oh, take these and take that, and I knew I couldn't take them. Or he sent me to therapy work, and it did not help me." A.R. 35. Instead, Buonviaggio testified, he took only Tylenol, "three to four times a day," A.R. 34, and went to the chiropractor about once a month, which would relieve some of the pain for "about a week or so." A.R. 33.

Buonviaggio first applied for disability benefits on June 28, 2001; on November 20, 2001, Dr. Collalto, who had not seen Buonviaggio since January 1995, dictated a letter stating that "the patient is unable to return to work in his prior capacity and he is currently disabled." A.R. 127. On March 12, 2002, Dr. Collalto completed a form evaluation of Buonviaggio's residual functional capacity ("RFC"), giving his opinion that in an eight-hour

4

work day, Buonviaggio could sit for a maximum of two hours, stand for no more than one hour, and walk for no more than one hour; he could occasionally lift up to ten pounds, but never more, and he could occasionally carry up to 20 pounds, but never more; he could occasionally bend, squat, and climb, but never crawl. A.R. 109. The form contained a space for "Earliest date evaluation is applicable," which Dr. Collalto left blank.

The record also contains a second version of this form evaluation, however, that was apparently faxed from the office of Buonviaggio's counsel on March 28, 2002 and returned by Dr. Collalto's office on March 29, 2002. Although it is in all other respects identical to the original RFC form, where the previous version was blank this later version lists "9/26/92" as the "[e]arliest date evaluation is applicable." A.R. 121. Dr. Collalto had just examined Buonviaggio again on March 26, 2002, and noted, but only in the present tense, "the patient is disabled and is unable to work." A.R. 126.

The ALJ issued a written decision finding that Buonvaggio indeed had a "severe impairment" under 20 C.F.R. § 404.1521, and that he "did not engage in substantial gainful activity from the alleged onset of disability through his last date insured." A.R. 22. Nevertheless, the ALJ found, Buonviaggio's "past relevant work as a firefighter and construction worker did not require the performance of work-related activities precluded by his residual functional capacity." A.R. 22. After reviewing Buonviaggio's medical records created between September 1992 and September 1998, the ALJ explained, "[o]verall, the record shows that the claimant improved significantly after surgery on October 16, 1992. Physical therapy was effective in relieving some mild recurrences of low back pain." A.R. 20. The ALJ did not mention any of the medical evidence generated after September 1998, except to say: "[t]he record

5

shows that he had some subsequent medical problems, but they developed after the date last insured." A.R. 21.

ANALYSIS

The question on review is whether the ALJ's decision that Buonviaggio is not entitled to disability benefits is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). In order to be eligible for disability benefits, Buonviaggio must prove before the Commissioner that, "by reason of [a] medically determined physical or mental impairment which ... has lasted ... for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." *Id.* at § 423(d)(2)(A).

The Commisioner employs a five-step analysis in evaluating claims for disability benefits. *See* 20 C.F.R. § 404.1520 (2005)[2]; *Berry*, 675 F.2d at 467. At issue here is the ALJ's decision at the fourth step, the evaluation of Buonviaggio's "residual functional capacity," and

---

[2] Part (a)(4) provides:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled....

specifically whether Buonviaggio, during the period for which he claims benefits, could still perform his past relevant work as a firefighter and a construction worker.

In weighing the evidence under this framework, the so-called "treating physician rule" applies; that is, the ALJ must give the medical opinion of a treating physician as to the "nature and severity" of a claimant's impairments "controlling weight" so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(d)(2) (2005). As Buonviaggio points out, "[i]t is well-settled that the 'treating physician rule' applies to retrospective diagnoses ... as well as to contemporaneous ones." *Martinez v. Massanari*, 242 F. Supp. 2d 372 (S.D.N.Y. 2003). Therefore, Buonviaggio contends, it was error for the ALJ not to consider the faxed version of Dr. Collalto's form RFC evaluation, which appears to convey his opinion that Buonviaggio was disabled as of September 26, 1992. As Buonviaggio argues, the ALJ "did not cite any medical opinion to dispute [Dr. Collalto's] conclusions" in the RFC evaluation, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), including, for example, the conclusion that Buonviaggio could never, since September 1992, stand for more than an hour during an eight-hour work day or carry more than 20 pounds. Buonviaggio thus asserts that "Dr. Collalto's opinion ... must be credited." Br. of Pl. at 10.

For her part, the Commissioner argues the ALJ "explicitly stated that he 'carefully considered all of the medical evidence in the record,'" Letter Brief of Def. at 1, *quoting* A.R. 22, but that he gave little weight to the form RFC evaluation -- so little as to be unworthy of mention -- because of its inconsistency with the Dr. Collalto's contemporaneous records of Buonviaggio's condition after his surgery. Alternatively, the Commissioner posits, the ALJ reasonably

7

understood Dr. Collalto's form RFC evaluation, like the letter of November 20, 2001 and the notes from Buonviaggio's March 28, 2001 office visit, to be merely expressions of Buonviaggio's then-existing condition rather than retrospective blanket statements about Buonviaggio's condition from 1992 onward.

The Commissioner's first argument is wrong; as an initial matter, there is hardly anything explicit about the ALJ's catchall assurance that he "considered all of the medical evidence in the record." A.R. 22. Taken as true, the faxed version of Dr. Collalto's RFC evaluation is directly contrary to the ALJ's decision -- suffice it to say, one who has the physical limitations Dr. Collalto described Buonviaggio as having could not perform the duties of a firefighter or construction worker -- yet the ALJ offered no explanation as to why the evaluation was discredited. The Commissioner's regulations promise more: "We will always give good reasons in our ... decision for the weight we give your treating source's opinion," 20 C.F.R. § 404.1527(d)(2). Meaningful judicial scrutiny requires that the Commissioner fulfill that promise.

The Commissioner's second argument, that on this record there was a reasonable basis for discrediting the faxed RFC, seems true enough. Indeed, as the facts recited above suggest, there may be an ample basis to deny the claim. For example, Buonviaggio may well have been gainfully employed during the period for which he claims benefits. Though he claims an onset date in 1992, and he testified that he has not worked since then (*see* A.R. 31-32), both his physical therapist (in 1994, *see* A.R. 131) and his chiropractor (in 1996, *see* A.R. 111) believed otherwise. Moreover, the retrospective RFC evaluation appears to be, at least absent further explanation from Dr. Collalto, inconsistent with the Dr.'s contemporaneous records; it is not even clear whether it was Dr. Collalto himself who filled in the date of "9/26/92" on the

8

faxed version of the RFC form. But the ALJ was silent about all of this, and neither the Commissioner's counsel nor the court is permitted to plug the holes in his explanation. Moreover, before denying Buonviaggio's claim, the ALJ had a duty to develop the record to resolve these apparent inconsistencies. *See Sims v. Apfel*, 530 U.S. 103, 111 (2000) (noting "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"); *see also* 20 C.F.R. § 404.1512(d) (responsibility of the Commissioner to develop a "complete medical history" for the relevant period of time).

Accordingly, I remand the case to the Commissioner for reconsideration of Buonviaggio's claim. Although the court may reverse an ALJ's decision and order the payment of benefits in a case in which "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980), as explained above, the evidence in this record is far from clear. Accordingly, Buonviaggio's motion that the case be remanded only for the calculation of benefits is denied.

I need not address at this juncture Buonviaggio's argument that the ALJ erred in evaluating his credibility. New evidence from Dr. Collalto -- and perhaps from others, like the physical therapist and the chiropractor -- must necessarily be introduced on remand, which evidence may corroborate or detract from Buonviaggio's testimony, and Buonviaggio may well be entitled to an opportunity to explain, supplement, or contradict the new evidence. Buonviaggio's credibility and its weight will therefore have to be reevaluated on remand in light of the evidence in the record as a whole.

CONCLUSION

For the reasons set forth above, the cross-motions for judgment on the pleadings are denied and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

So Ordered.


John Gleeson, U.S.D.J.


DATED: Brooklyn, New York
December 2, 2005